UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SERVANDO TORRES HERNANDEZ, | Case No. 1:25-cv-00615-BLW |
| Petitioner, | **MEMORANDUM DECISION AND ORDER RE: PETITIONER'S MOTION FOR ATTORNEY FEES** |
| v. | |
| PAMELA BONDI, Attorney General; KRISTI NOEM, Secretary of Homeland Security; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement (ICE); JASON KNIGHT, Field Officer Director, ICE Salt Lake Field Office; KENNETH PORTER, Field Officer Director, ICE Boise Field Sub-Office; STEVE ANDERSON, Sheriff, Jefferson County, Idaho, | |
| Respondents. | |

Before the Court is Petitioner's Motion for Attorney Fees and Costs Under

Equal Access to Justice Act (EAJA) (28 U.S.C. § 2412(D) (Dkt. 22). Petitioner

requests an award of attorney fees and paralegal fees in the total amount of

$25,002.00 and expenses in the amount of $57. Respondents oppose the motion. *See*

*Resp'ts' Opp'n*, Dkt. 23. Having carefully considered the record, the Court enters the

following Order.

## BACKGROUND

Petitioner initiated this action on October 24, 2025, seeking a writ of habeas

corpus. *See Petition*, Dkt. 1. On November 19, 2025, the Court granted the Petition for

**MEMORANDUM DECISION AND ORDER - 1**

Writ of Habeas Corpus, ordering Petitioner's immediate release. *See Memorandum Decision and Order*, Dkt. 15. The next day, the Court issued a Judgment, making the decision final. *See Judgment*, Dkt. 16; *see also Nadarajah v. Holder*, 569 F.3d 906, 923 (9th Cir. 2009) (finding that a petitioner securing relief on habeas corpus litigation "ultimately prevailed"). Respondents filed a notice of appeal on January 16, 2026. *See Notice of Appeal*, Dkt. 18. The Ninth Circuit held the appeal in abeyance pending its decision in a related case and, on Respondents' own motion, dismissed the appeal on March 31, 2026. *See USCA Order*, Dkt. 21.

Petitioner now seeks attorney fees and other expenses pursuant to the EAJA, 28 U.S.C. § 2412(d). *See Mot. for Att'y Fees*, Dkt. 22. The motion was filed on April 30, 2026, within thirty days of the order dismissing the appeal, and is therefore timely. *See* 28 U.S.C. § 2412(d)(1)(B), (d)(2)(G). Respondents oppose the motion.

## LEGAL STANDARD

The EAJA provides for an award of attorney fees to private litigants who prevail in civil actions against the United States and timely file a petition for fees. 28 U.S.C. § 2412(d)(2)(A). Under the EAJA, the Court must award attorney fees to the prevailing party unless it finds the Government's position was "substantially justified" or that special circumstances make an award unjust.  28 U.S.C. § 2412(d)(1)(A).

The EAJA provides for an award of "reasonable" attorney fees. 28 U.S.C. § 2412(d)(2)(A).  The Court applies the principles set forth in *Hensley v. Eckerhart*, 461 U.S. 424 (1983) to determine what constitutes a reasonable fee award under the

MEMORANDUM DECISION AND ORDER - 2

EAJA. *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012). The prevailing party bears the burden to prove the fee amount requested is reasonable and must submit documentation in support of the fee request. 28 U.S.C. § 2412(d)(1)(B); *Hensley*, 461 U.S. at 433. To determine the amount of a reasonable fee, courts generally take "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The Court may reduce a fee award if the applicant has provided inadequate documentation of the fees requested or claims hours are "excessive, redundant, or otherwise unnecessary." *Id.* at 434. The Court may also consider other factors to adjust the fee upwards or downwards, "including the important factor of the results obtained." *Id.*

## ANALYSIS

### A. Substantial Justification

Respondents do not dispute that Petitioner is the prevailing party in this action, that his motion is timely, or that no special circumstances exist that would make a fee award unjust.[1] Rather, they argue their legal position was substantially justified, even while acknowledging that "a number of district courts around the country, including this Court, have ruled squarely against [their] position." *Resp. Opp'n*, p. 2, Dkt. 23. They contend that the emergence of "a national circuit split," the absence of controlling Ninth Circuit authority, and their reliance on then-existing Board of Immigration Appeals precedent together made their position one a reasonable person

---

[1] Respondents also do not dispute that Petitioner is a "party" under the EAJA, i.e., "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B).

MEMORANDUM DECISION AND ORDER - 3

could hold. *Id.* at 2–3.

A position is substantially justified if it is "justified to a degree that could satisfy a reasonable person," which requires a reasonable basis in both law and fact. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The inquiry has two components. The Court considers both the underlying agency conduct that gave rise to the litigation and the government's position during the litigation itself. *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1168 (9th Cir. 2019) (en banc); *see* 28 U.S.C. § 2412(d)(2)(D). Respondents bear the burden of showing that their position was substantially justified in both these respects. *See Gardner v. Berryhill*, 856 F.3d 652, 656 (9th Cir. 2017). A position may be substantially justified even though it is not correct. *Pierce*, 487 U.S. at 566 n.2.

Respondents fail to carry this burden. Respondents' decision to detain Petitioner without bond—and thousands more like him—represented an abrupt and "radical departure from the historical treatment of noncitizens who entered the United States without inspection." *Salazar v. Noem*, No. 8:26-CV-44, 2026 WL 594606, at *1 (D. Neb. Mar. 3, 2026); *see also Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 997 (N.D. Cal. 2025) (citing *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 n.13 (7th Cir. 2025)). For the thirty years following the 1996 amendments to the Immigration and Nationality Act, and across five presidential administrations, the government treated noncitizens who entered without inspection and had since been living in the interior as detained under 8 U.S.C. § 1226 and eligible for release

MEMORANDUM DECISION AND ORDER - 4

on bond. *Rodriguez Vazquez v. Bostock*, --- F.4th ----, 2026 WL 2196424, at *24 (9th Cir. July 30, 2026); *see also Barbosa da Cunha v. Freden*, 175 F.4th 61, 91 (2d Cir. 2026). That changed in the spring and summer of 2025, when officers began re-arresting previously released noncitizens without any individualized finding that their circumstances had changed. *Garro Pinchi*, 813 F. Supp. 3d at 995–96.

The agency offered no contemporaneous explanation for that change. It gave no public rationale when the practice shifted. When courts asked for one, the answers were inconsistent. In some cases the agency pointed to the availability of detention beds, in others to expedited removal, and in others it offered no basis the court could identify. *Garro Pinchi*, 813 F. Supp. 3d at 996–97. Not until July 2025, two months after the practice had already changed, did Immigration and Customs Enforcement issue the internal memorandum announcing that the agency had "revisited its legal position" and would treat § 1225 as the governing detention authority for all applicants for admission. *Id.* at 997–98; *see Rodriguez Vazquez*, 2026 WL 2196424, at *8. An agency that departs from thirty years of practice and settles on its legal justification two months later has not carried its burden of showing that the departure was reasonable when it occurred.

Respondents' reliance on Board of Immigration Appeals precedent does not help them. The Board adopted the new interpretation in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), in September 2025, after the agency had issued its guidance and after the Board itself had rejected the theory in unpublished decisions

MEMORANDUM DECISION AND ORDER - 5

remanding to the immigration judges who first advanced it. *See Rodriguez Vazquez*, 2026 WL 2196424, at *8. That precedent was itself a product of the change in position. It cannot serve as an independent justification for it.

Respondents' remaining argument is that the division of authority among the courts of appeals shows their reading of the statute was one a reasonable person could adopt. The statutory question is not a simple one. The Ninth Circuit has since observed that "no reading of the complicated and interrelated textual provisions at issue here is without some shortcomings." *Rodriguez Vazquez*, 2026 WL 2196424, at *3. The argument nonetheless fails for three reasons.

First, the decisions Respondents rely upon came too late. The Fifth Circuit decided *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, on February 6, 2026, and the Eighth Circuit decided *Avila v. Bondi*, 170 F.4th 1128, on March 25, 2026. Both postdate Petitioner's detention, this Court's judgment, and Respondents' notice of appeal. Respondents may rely on the reasoning of those decisions insofar as it bears on whether their position was reasonable when they took it. They may not rely on the existence of the decisions themselves, which supplied no justification for detaining Petitioner in October 2025 or for defending that detention in this Court the following month. *See Merlo Puerto v. Leeper*, --- F.Supp.3d ----, 2026 WL 1600665, at *5 (E.D.N.Y. June 4, 2026).

Second, the division among the circuits is lopsided, and it has now been resolved here. The Second, Sixth, Tenth, and Eleventh Circuits have rejected

**MEMORANDUM DECISION AND ORDER - 6**

Respondents' reading, and the Seventh Circuit's splintered decision reached the same result. Only the Fifth and Eighth Circuits have agreed with Respondents. *Rodriguez Vazquez*, 2026 WL 2196424, at *9. The imbalance in the district courts is greater still. As of late 2025, challengers had prevailed in at least 350 of 362 reported decisions, issued by more than 160 judges in some fifty courts. *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 505–06 (S.D.N.Y. 2025); *see also Fermenar-Mast v. Jamison*, 2026 WL 1365013, at *2 (E.D. Pa. May 15, 2026) ("While none of the foregoing appellate authority is binding on this Court, the decisions in *Barbosa da Cunha, Lopez Campos*, and *Fidencio Alvarez* align with this Court's analysis in *Ndiaye* and with over 10,000 decisions of over 424 district judges across the nation who, as of May 13, 2026, have also rejected the government's position."). On July 30, 2026, the Ninth Circuit affirmed the judgment in *Rodriguez Vazquez*, the very appeal in which Respondents asked the court of appeals to hold this case in abeyance, and held that noncitizens present without admission and apprehended in the interior are subject to § 1226 rather than § 1225(b)(2)(A). 2026 WL 2196424, at *26.

Respondents point to authority treating a division among courts as itself strong evidence of substantial justification. *See Kadidiatou D. v. Easterwood*, No. 26-CV-1218, 2026 WL 969017, at *1 (D. Minn. Apr. 10, 2026). But the Ninth Circuit treats the novelty of a question as one factor among several. *Ibrahim*, 912 F.3d at 1168. A contrary rule would let an agency insulate almost any new position from EAJA liability by litigating widely enough to produce disagreement somewhere.

MEMORANDUM DECISION AND ORDER - 7

Third, the difficulty the Ninth Circuit described does not aid Respondents. That court found the statutory text imperfect on both sides, but it resolved the remaining doubt against the government because of the settled practice Respondents abandoned. That no administration in three decades had found the mandatory-detention duty Respondents now assert was, in the court's words, "strong evidence that it does not exist." *Rodriguez Vazquez*, 2026 WL 2196424, at *25 (quoting *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 250 (2026)). That reasoning cuts against Respondents, not for them.

Respondents have not shown that either the agency's conduct or their litigation position was substantially justified, and nothing in the record suggests special circumstances that would make an award unjust. Petitioner is entitled to an award of fees under 28 U.S.C. § 2412(d)(1)(A).

### B.  Reasonableness of Fees

Respondents ask the Court to measure this request against the fee awards entered in the related habeas petitions filed after the same enforcement operation, which have generally fallen near $5,000, and to cap the award here at that figure. *Resp'ts' Opp'n* at 7–8, Dkt. 23. The Court declines to do so.

The question under the EAJA is whether the fees sought are reasonable on this record. *Hensley*, 461 U.S. at 433. What other petitioners' counsel charged in other cases is not the measure, and Respondents cite no authority making it one. The related motions were unopposed, and Respondents filed notices of non-opposition in every

MEMORANDUM DECISION AND ORDER - 8

one of them. *Resp'ts' Opp'n* at 8 n.5. Those motions were decided on that footing. The out-of-district awards Respondents collect, which range from roughly $3,500 to roughly $6,800, were likewise entered on their own records and do not set a benchmark for this one.

Petitioner has in any event offered an unrebutted explanation for the difference. Counsel who handled more than twenty of these petitions in parallel developed the research, the briefing architecture, the supporting exhibits, and the procedural checklists once, then adapted them across the group, so that the marginal cost of each additional petition was lower. *See Decl. of Nikki Ramirez-Smith* ¶¶ 4–9, Dkt. 24-1, Ex. C. Counsel here had no comparable inventory of cases across which to spread that work. That the related cases produced lower per-client fees reflects how those cases were litigated. It does not set a ceiling for a case handled on its own.

None of this relieves the Court of its independent obligation to review the rates charged and the hours claimed. That obligation exists whether or not a motion is opposed, and the reductions described below rest on the record in this case rather than on any comparison to the awards entered in the related matters.

### 1.  Hourly Rates

Petitioner seeks enhanced rates of $490 per hour for Ms. Moss, $330 per hour for Ms. Renshaw, and $275 per hour for Ms. Vasquez, a paralegal. The EAJA caps attorney fees at $125 per hour unless the Court finds a higher rate justified by an increase in the cost of living or by a special factor such as the limited availability of

MEMORANDUM DECISION AND ORDER - 9

qualified attorneys for the proceedings involved. 28 U.S.C. § 2412(d)(2)(A). The Ninth Circuit publishes guidelines adjusting that maximum for cost of living, and the adjusted maximum for work performed in 2025 was $258.46.[2]

A specialty in immigration law can supply the special factor where the litigation demands expertise in the "esoteric nooks and crannies of immigration law . . . to give the alien a fair shot at prevailing." *Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005) (quoting *Muhur v. Ashcroft*, 382 F.3d 653, 656 (7th Cir. 2004)). The enhancement is available where counsel possesses distinctive knowledge developed through a practice specialty, those skills were needed in the litigation, and they were not available elsewhere at the statutory rate. *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991).

Those conditions are satisfied here. The petition required working through the relationship between 8 U.S.C. §§ 1225 and 1226, the legislative and agency history behind them, the changes worked by the Laken Riley Act, and the interaction between immigration custody classifications and federal habeas procedure. That is not general civil practice, and the record reflects that Mr. Torres Hernandez's family was referred to undersigned counsel because the attorney they first consulted does not practice in federal court. *See* Supp. Moss Aff. ¶ 3, Dkt. 24-1. An enhancement above the statutory maximum is warranted for counsel who possess that specialty. Respondents' criticism of counsel's procedural missteps in this case and in an unrelated petition

---

[2] *See* https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/.

MEMORANDUM DECISION AND ORDER - 10

does not bear on whether the specialty exists. At most it bears on the reasonableness of particular hours, which the Court takes up below.

The size of the enhancement is a separate question. An enhanced rate must still be tied to prevailing market rates for the kind and quality of the services furnished. 28 U.S.C. § 2412(d)(2)(A). The Court has already explained that the amounts awarded in the related petitions do not cap the award here. The prevailing market rate is a different question. A market rate is a fact about the legal market in this district rather than about how a particular case was staffed, and the Court's assessment of it should not shift from case to case.

Petitioner's market evidence consists of declarations from six Idaho immigration practitioners reporting rates of $500, $350, $350, $350, $300, and $250 per hour. *See* Dkt. 22-2, Ex. C. Each declaration states the practitioner's standard rate, but none explains the kind of work to which the higher figures apply. Respondents observe, correctly, that most of the declarants charge $350 or less, and that Mr. Christensen, who referred this matter to undersigned counsel because he does not practice in federal court, charges $250. *Resp'ts' Opp'n* at 5, Dkt. 23. The highest rate sought in any of the related petitions arising from the same enforcement operation was $300. On this record the Court finds that $300 per hour reflects the prevailing market rate for immigration habeas work in this district, and it will allow that rate for Ms. Moss.

Ms. Renshaw stands differently. The special factor turns on whether the

**MEMORANDUM DECISION AND ORDER - 11**

attorney possesses distinctive knowledge and skills developed through a practice specialty. *Love*, 924 F.2d at 1496. As Respondents point out, neither the motion nor the supporting declarations address Ms. Renshaw's experience at all. *Resp'ts' Opp'n* at 4–5, Dkt. 23. The reply supplies her credentials, and they are strong ones. She served as Editor-in-Chief of the Idaho Law Review, clerked at the Idaho Supreme Court, earned coursework awards in immigration law, and worked as a research assistant in the immigration clinic. Dkt. 22-3. Those are the credentials of an able recent graduate rather than evidence of a specialty developed in practice, and the limited availability of attorneys with general legal competence is not a special factor. *Pierce*, 487 U.S. at 572–73. Ms. Renshaw's time will be compensated at the cost-of-living adjusted statutory maximum, which was $258.46 for work performed in 2025 and, by Petitioner's own unrebutted calculation, $262.86 for work performed in 2026. *See Mot. for Att'y Fees* at 15–16, Dkt. 22. Petitioner's tables group the hours by invoice rather than by the date the work was performed, which places December 2025 work at the 2026 rate. The rate follows the year in which the work was done. *Thangaraja*, 428 F.3d at 876–77.

The requested paralegal rate presents a different problem. Paralegal time is recoverable at prevailing market rates. *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 590 (2008). But Petitioner's market evidence is limited to attorney rates. Ms. Vasquez's declaration describes her duties and her five years of immigration experience, Dkt. 22-4, and the Court does not doubt that her work required familiarity

MEMORANDUM DECISION AND ORDER - 12

with federal practice. Nothing in the record establishes what paralegals with that experience charge in this district, and the requested $275 per hour exceeds the hourly rate charged by two of the immigration attorneys who submitted declarations on Petitioner's behalf. The Court will allow paralegal time at $175 per hour.

### 2. Hours Expended

After the withdrawal of 1.9 hours of clerical time, Petitioner claims 68.30 hours, consisting of 18.90 hours for Ms. Moss, 39.20 hours for Ms. Renshaw, and 10.20 hours for Ms. Vasquez. Respondents identify 18.6 of those hours as non-compensable and sort them into three categories. *Haws Decl.* ¶ 7, Dkt. 23-1. Petitioner withdrew 1.9 hours and contests the remaining 16.7. The Court addresses each category.

The first is clerical work, which Respondents put at 4.9 hours. Purely clerical tasks are overhead and are not billable at a paralegal rate regardless of who performs them. *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989); *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). Petitioner withdrew 1.9 hours and contests the remaining 3.0, all billed by Ms. Vasquez. Those entries describe filing documents through ECF, mailing copies to the United States Attorney, obtaining a notarization, uploading documents to the firm's drive, and calendaring. Each is bundled in a single block with a passing reference to substantive work, which makes it impossible to determine how the time was divided. The burden of documentation rests with the applicant, *Hensley*, 461 U.S. at 433, 437, and the Court will exclude the remaining 3.0

MEMORANDUM DECISION AND ORDER - 13

hours.

The second is time spent on Mr. Torres Hernandez's removal proceedings, which Respondents put at 6.2 hours. The EAJA authorizes fees incurred in the civil action against the United States, 28 U.S.C. § 2412(d)(1)(A), not fees incurred in administrative proceedings. *See Melkonyan v. Sullivan*, 501 U.S. 89, 97 (1991); *Mendenhall v. NTSB*, 213 F.3d 464, 469 (9th Cir. 2000). Mr. Torres Hernandez was released in November 2025. These entries describe attending ICE check-ins in December 2025 and April 2026, travel to and from those appointments, and the scheduling around them. Counsel responds that the attendance was necessary to confirm that ICE was complying with the release order, but the entries themselves describe answering questions about the CBP One application, confirming that no removal hearing had been set, and recapping the appointments for co-counsel. The 6.2 hours will be excluded.

The third is time Respondents describe as unrelated to either proceeding, which they put at 7.5 hours. Most of it is a single six-hour entry dated December 4, 2025, for continuing to draft a reply to the response to the temporary restraining order, work that postdates the Court's ruling on the Petition by more than two weeks. Counsel acknowledges that the date is wrong, attributes it to the firm's billing department, and cannot say when the work was performed. Whatever its cause, the entry cannot be placed in time, and the Court has no way to determine whether it duplicates the 8.9 hours Ms. Renshaw billed for that same briefing between November 3 and November

MEMORANDUM DECISION AND ORDER - 14

6. The remaining entries in this category cover a call with a colleague about her own habeas cases, coordination over a PACER login, and a block entry mixing review of the judgment with faxing, screenshots, and check-in scheduling. The Court will exclude 7.2 hours. The exception is the 0.3 hour Ms. Moss spent circulating the market-rate affidavit to the Idaho immigration listserv, which is fee-application work and is treated below.

Excluding these entries leaves 51.9 hours, consisting of 18.4 hours for Ms. Moss, 27.9 hours for Ms. Renshaw, and 5.6 hours for Ms. Vasquez.

Respondents separately object to the time counsel devoted to the fee application itself. Counsel spent roughly 14 hours preparing the motion and another 10.9 preparing the reply, and Respondents calculate that Petitioner billed $5,087.50 on the fee motion against $3,185.00 on the habeas petition that produced his release. Haws Decl. ¶¶ 7.d–7.e, Dkt. 23-1. Fees incurred litigating an EAJA application are recoverable. *Comm'r, INS v. Jean*, 496 U.S. 154, 161–62 (1990). The comparison Respondents draw does not show that the hours were unreasonable. The two filings called for different work. The fee application required assembling and reviewing five months of billing records, establishing when the judgment became final after Respondents dismissed their appeal, gathering market-rate evidence from other practitioners in the district, and answering an opposition that contested entitlement, rates, hours, and the total award. The Court will not reduce these hours. The rates allowed above address the size of the request.

**MEMORANDUM DECISION AND ORDER - 15**

### C. The Award

At the rates allowed above, the lodestar on the remaining hours is $5,520.00 for Ms. Moss (18.4 hours at $300) and $980.00 for Ms. Vasquez (5.6 hours at $175). Ms. Renshaw's time divides between $2,868.91 for work performed in 2025 (11.1 hours at $258.46) and $4,416.05 for work performed in 2026 (16.8 hours at $262.86), for a subtotal of $7,284.96. The award is therefore $13,784.96. That figure falls between Respondents' own calculation of a reduced award at the statutory rate, Haws Decl. ¶ 9, Dkt. 23-1 ($10,390.09), and Petitioner's alternative calculation at that rate, Supp. Moss Aff., Dkt. 24-1 ($17,782.17).

Petitioner separately seeks $57 in expenses. A prevailing party may recover other expenses, including filing fees and postage, under the EAJA. 28 U.S.C. § 2412(d)(1)(A); *Int'l Woodworkers of Am. Local 3-98 v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1985). The Court will award expenses in the amount of $57.

An EAJA award belongs to the litigant and is subject to offset against any federal debt he owes. *Astrue v. Ratliff*, 560 U.S. 586, 589 (2010). Mr. Torres Hernandez has assigned his right to the award to counsel and has attested that he owes no federal debt. *See* T*orres Hernandez Decl.*, Dkt. 22-2, Ex. D. Subject to any applicable offset, the award may be sent directly to the law firm of Petitioner's counsel.

**MEMORANDUM DECISION AND ORDER - 16**

## ORDER

**IT IS ORDERED that:**

1. Petitioner's Motion for Attorney Fees and Costs Under Equal Access to Justice Act (EAJA) (28 U.S.C. § 2412(D) (Dkt. 22) is **GRANTED in part** and **DENIED in part**.

2. Petitioner is awarded attorney and paralegal fees in the amount of **$13,784.96** and expenses in the amount of **$57.00**, to be paid by Respondents. Subject to any applicable offset for federal debt, the award may be sent directly to the law firm of Petitioner's counsel.

DATED: August 4, 2026

B. Lynn Winmill
U.S. District Court Judge